## UNITED STATES DISCTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| GAIGE GROSSKREUTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 21-CV-1192** |
| | ) | |
| THE CITY OF KENOSHA, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT KYLE RITTENHOUSE'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Kyle Rittenhouse, by and through his undersigned counsel, hereby Answers the First Amended Complaint filed by Plaintiff Gaige Grosskreutz. Except as otherwise admitted herein, Defendant Rittenhouse denies each and every allegation in the Complaint, including, without limitation, any allegations contained in its prayer for relief, headings, and subheadings. To the extent that Defendant Rittenhouse denies knowledge or information sufficient to form a belief about the truth of an allegation, that allegation is deemed to be denied. The Answer is based upon Defendant Rittenhouse's investigation to date, and Defendant Rittenhouse expressly reserves the right to amend the Answer to the full extent provided by applicable law.

## I.    INTRODUCTION

1.    "We appreciate you guys- we really do."

**ANSWER**: Defendant Rittenhouse asserts that the statement contained in this paragraph fails to provide sufficient information to form the basis of an allegation to which Defendant Rittenhouse may reasonably provide a response.

1

2.     These were the words of Kenosha law enforcement officers- words of encouragement and thanks, given to Kyle Rittenhouse and his band of white nationalist vigilantes on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse denies that he is a "white nationalist vigilante." Defendant Rittenhouse further denies being part of any "band" of "white nationalist vigilantes" on the evening of August 25, 2020. Defendant Rittenhouse lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained within this paragraph of this Complaint.

3.     On August 25, 2020, in Kenosha, Wisconsin, Plaintiff Gaige Grosskreutz was participating in protests against police violence, which were sparked by the police shooting of Jacob Blake, two days earlier. Mr. Blake was a Black man who had been shot in the back seven times by an officer in the Kenosha Police Department, and Mr. Grosskreutz was among many who peacefully protested the shooting and Kenosha's pattern of racist violent behavior by police officers and other officials.

**ANSWER**: Defendant Rittenhouse admits, based upon representations of counsel, that the "protests" which occurred in Kenosha, Wisconsin, on August 25, 2020, were against police violence and were sparked by the police shooting of Jacob Blake two days earlier. Defendant Rittenhouse denies that the "protesting" which occurred in the evening hours of August 25, 2020, and the preceding dates was "peaceful." Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph of the Complaint.

4.     During the protests, private citizens took up arms and patrolled the streets of Kenosha, acting as law enforcement agents. Many of them had posted racist messages and

2

threatened violence on social media before descending upon Kenosha. They made their plans known to law enforcement officials.

**ANSWER**: Defendant Rittenhouse denies: 1). having patrolled the streets of Kenosha, acting as a law enforcement agent; 2). having personally posted any racist messages on social media related to the civil unrest in Kenosha; 3). having personally threatened violence on social media related to the civil unrest in Kenosha; and 4). making any plans to go to Kenosha known to law enforcement. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

5.    These armed individuals were not Kenosha business owners whose property had been damaged, nor were they hired by any of those businesses to come protect their property.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph.

6.    One of these armed individuals was Defendant Kyle Rittenhouse, who was then 17 years old. He crossed into Wisconsin from Illinois, carrying an assault rifle on the streets of Kenosha, in open violation of the law.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he was compliant within the laws of the state of Wisconsin, under Wis. Stat. § 948.60(3)(c), while carrying the firearm at issue. Defendant Rittenhouse affirmatively admits that the firearm at issue was purchased in the state of Wisconsin and did not leave the state of Wisconsin after Dominick Black legally purchased it. Defendant Rittenhouse denies the remaining allegations contained within this paragraph of the Complaint.

7.      Astonishingly, the Kenosha Police Department, Kenosha County Sheriff's Department, their supervising officials and police officers, and law enforcement officers from surrounding communities did not treat Defendant Rittenhouse or any of the other armed individuals patrolling the streets as a threat to the safety of themselves or the citizens they were sworn to protect.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge and information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

8.      Instead, the law enforcement Defendants deputized these armed individuals, conspired with them, and ratified their actions by letting them patrol the streets, armed with deadly weapons, to mete out justice as they saw fit. In addition, the law enforcement Defendants thanked Defendant Rittenhouse and other armed individuals, gave them water, and allowed them to openly defy the emergency curfew order that was in place. The law enforcement Defendants even made plans to funnel the protestors toward the armed individuals [to] "deal with them."

**ANSWER**: Defendant Rittenhouse admits having received water directly from law enforcement on August 25, 2020. Defendant Rittenhouse denies: 1). being "deputized" by any member of law enforcement; 2). conspiring with any member of law enforcement; 3). "patrolling" the streets of Kenosha; 4). meting out any type of "justice;" and 5). having participated in any "plan" by law enforcement to "deal with" any other individual(s) present in Kenosha on August 25, 2020. Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph of the Complaint.

9.      As a result, Defendant Rittenhouse fired his assault rifle indiscriminately multiple times at citizens on the street. He shot and killed two men, seriously injured a third, and narrowly

missed a fourth. At the time Defendant Rittenhouse encountered Gaige Grosskreutz, Defendant Rittenhouse had already killed two men.

**ANSWER**: Defendant Rittenhouse denies firing his rifle "indiscriminately" at any individual. Defendant Rittenhouse affirmatively admits lawfully firing four shots at Joseph Rosenbaum in an act of self-defense after Rosenbaum threatened Rittenhouse and chased him down. Defendant Rittenhouse affirmatively admits legally firing one shot at Anthony Huber in an act of self-defense, after being assaulted at least twice by Huber with a skateboard. Defendant Rittenhouse affirmatively admits legally firing two shots at a masked, unidentified individual known as "Jump-Kick Man," in an act of self-defense, in response to being assaulted by that individual and sustaining a head injury. Defendant Rittenhouse affirmatively admits to successfully disarming Gaige Grosskreutz with one shot from his firearm as an act of self-defense, after Grosskreutz pointed a loaded handgun at Defendant Rittenhouse while he lay in the street. Defendant Rittenhouse denies the remaining allegations contained within this paragraph of the Complaint.

10.     Mr. Grosskreutz tried to end Defendant Rittenhouse's homicidal rampage.

**ANSWER**: Defendant Rittenhouse denies all allegations contained in this paragraph of the Complaint. Defendant Rittenhouse specifically denies that any deaths attributed to him in this Complaint were acts of "homicide," or having engaged in a "homicidal rampage." Defendant Rittenhouse affirmatively admits that all casualties or injuries resulting from the course of activity relevant to this Complaint occurred as a result of his lawful exercise of his right to self-defense.

11.     Defendant Rittenhouse had first killed Joseph Rosenbaum, an individual who had confronted Defendant Rittenhouse wandering the streets pointing a weapon of war at protestors.

5

**ANSWER**: Defendant Rittenhouse affirmatively admits lawfully firing four shots at Joseph Rosenbaum in an act of self-defense after Rosenbaum threatened Rittenhouse, chased him down and threatened to steal his weapon. Defendant Rittenhouse affirmatively admits that this lawful exercise of his right to self-defense ultimately resulted in the death of Mr. Rosenbaum. Defendant Rittenhouse denies the remaining allegations contained in this paragraph of the Complaint.

12.     Defendant Rittenhouse shot him four times, including once in the head.

**ANSWER**: Defendant Rittenhouse denies shooting Rosenbaum in the head. Defendant Rittenhouse affirmatively admits lawfully firing four shots at Joseph Rosenbaum in an act of self-defense after Rosenbaum threatened Rittenhouse, chased him down, and attempted to steal his weapon. Defendant Rittenhouse affirmatively admits that as Rosenbaum reached out and threw himself towards  Rittenhouse's weapon, one of the shots fired grazed the side of Rosenbaum's head. Defendant Rittenhouse affirmatively admits that the amount of force used against Mr. Rosenbaum was appropriate and necessary, under the circumstances that existed at the time.

13.     Instead of rendering aid to Mr. Rosenbaum, Defendant Rittenhouse fled.

**ANSWER**: Defendant Rittenhouse admits that he did not personally render aid to Mr. Rosenbaum. Defendant Rittenhouse denies that he "fled" after the shootings occurred. Defendant Rittenhouse affirmatively admits leaving the scene of the Rosenbaum shooting in order to reach law enforcement and surrender himself into their control.

14.     Defendant Rittenhouse's fleeing was all the more galling because he was standing only two hundred yards from a hospital.

6

**ANSWER**: Defendant Rittenhouse admits that the shooting occurred in close proximity to a hospital. Defendant Rittenhouse denies all remaining allegations contained in this paragraph of the Complaint.

15. When the protestors saw him fleeing, they called for him to stop. He kept running, pointing his AR-15 at protestors as he ran.

**ANSWER**: Defendant Rittenhouse denies that the individuals referenced were "protestors," as all lawful protesting that occurred in Kenosha on August 25, 2020, had ended at the conclusion of daytime hours. Defendant Rittenhouse denies that the individuals referenced as protestors in this paragraph were "calling for him to stop." Defendant Rittenhouse denies pointing his firearm at any protestors as he ran. Defendant Rittenhouse affirmatively admits that as he was running towards police, the identified individuals simultaneously called out demands for his execution. (i.e., "Cranium that boy!" and "Truck-f**k him!")

16. One protestor, a Black man who had watched Defendant Rittenhouse kill Mr. Rosenbaum, chased Rittenhouse in an effort to protect others from the violence he had just watched at the hands of Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that Joseph Rosenbaum was not yet deceased at the time this individual began his pursuit of Defendant Rittenhouse.

17. This individual did not have a weapon.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained within this paragraph of the Complaint.

18. This individual did not reach for Defendant Rittenhouse- his hands were in his pocket.

7

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

19.     Instead he tried to kick Mr. Rittenhouse's weapon out of his hands.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that this individual jump-kicked him in the face after Defendant Rittenhouse had already been knocked to the ground by other members of the violent mob chasing him.

20.     Mr. Rittenhouse fired his gun at this man twice.

**ANSWER**: Defendant Rittenhouse admits the allegations contained within this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that both shots were taken as lawful acts of self-defense under the laws of the state of Wisconsin.

21.     Defendant Rittenhouse tried to kill this man without any possible basis for believing that his life was in danger.

**ANSWER**: Defendant Rittenhouse denies the allegations contained within this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he had a reasonable fear of death or great bodily harm from this individual, based upon the totality of the circumstances as they existed at the time. Defendant Rittenhouse affirmatively admits sustaining a head injury as a result of the actions of this individual.

22.     Having seen this intent to kill with his own eyes, Anthony Huber tried to disarm Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that prior to this specific interaction, Anthony Huber had attempted to forcibly remove Defendant Rittenhouse's head from his

8

shoulders by swinging his skateboard at Defendant Rittenhouse's head and neck area. Defendant Rittenhouse affirmatively admits that Mr. Huber's attempt to disarm him was unlawful.

23.     Mr. Huber had heard that Rittenhouse had already killed and watched him shoot at an unarmed person- so Mr. Huber clearly understood that this was a violent individual.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that Joseph Rosenbaum was not yet deceased at the time of Anthony Huber's interactions with Defendant Rittenhouse.

24.     Defendant Rittenhouse then shot Mr. Huber in the chest, killing him instantly.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that the bullet which caused Huber's death was ultimately found lodged in his torso.

25.     Plaintiff Gaige Grosskreutz watched all of this happen.

**ANSWER**: Defendant Rittenhouse affirmatively admits, based upon Grosskreutz' own trial testimony, that Grosskreutz witnessed Rittenhouse sustain a head injury based upon the conduct of the individual who jump-kicked him in the face. Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph of the Complaint.

26.     He approached with his hands in the air to try to ease the situation and stop the killing.

**ANSWER**: Defendant Rittenhouse denies the allegations contained within this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that when Grosskreutz first ran up on Rittenhouse, as Rittenhouse still lay on the ground, Grosskreutz had a drawn, loaded pistol in his right hand. Defendant Rittenhouse affirmatively admits that after he turned to face

9

Grosskreutz, Grosskreutz raised his hands in the air in feigned surrender, but still retained active grip and control of his pistol. Defendant Rittenhouse affirmatively admits lowering his weapon upon seeing Grosskreutz's hands raised in such a manner. Defendant Rittenhouse affirmatively admits that after he lowered his weapon, Grosskreutz concluded his feint, raised his pistol and pointed the pistol at Rittenhouse's head with the intent to shoot Defendant Rittenhouse.

27.     Defendant Rittenhouse instead shot Mr. Grosskreutz in the bicep, leaving a gaping wound.

**ANSWER**: Defendant Rittenhouse admits to firing one shot at Grosskreutz's bicep, leaving a gaping would. Defendant Rittenhouse affirmatively admits that he fired this shot as a lawful act of self-defense. Defendant Rittenhouse denies the remaining allegations contained within this paragraph of the Complaint.

28.     Thankfully, Mr. Grosskreutz did not die that day.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse affirmatively admits that the shot fired did not produce a fatality. Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph of the Complaint.

29.     But he must live with the physical and emotional wounds inflicted by Defendant Rittenhouse and the Defendants who deputized and enabled him.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

30. The conduct of the Defendants in this case directly caused Gaige Grosskreutz's injury.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

## II. JURISDICTION AND VENUE

31. Jurisdiction of this Court is invoked pursuant [to] 28 U.S.C. §§1331 and 1343(a).

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

32. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because they are part of the same case and controversy described by Plaintiff's federal claims.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

33. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse admits the allegations contained in this paragraph of the Complaint.

## III. PARTIES

34. Plaintiff Gaige Grosskreutz is a citizen of the United States who resides in the state of Wisconsin.

**ANSWER**: Upon representations of counsel, Defendant admits that Plaintiff is a citizen of the United States who resides in the state of Wisconsin.

35. Defendant City of Kenosha is a municipality in the state of Wisconsin. Kenosha operates the Kenosha Police Department ("KPD"), which in turn sets city-wide policies for the conduct of police officers employed by the City of Kenosha.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

36. Defendant Kenosha County is a municipality in the state of Wisconsin. Kenosha County operates the Kenosha County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Kenosha County Sheriff's Department.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

37. Defendant DAVID G. BETH was the duly elected Sheriff of Kenosha County, Wisconsin. Defendant Beth had the authority to make and enforce policies of the Kenosha County Sheriff's Department. Mr. Beth is sued in his individual and official capacities.

**ANSWER**: Upon representations of counsel, Defendant Rittenhouse admits that David G. Beth was the duly elected Sheriff of Kenosha County, Wisconsin, on August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

38. Defendant DANIEL G. MISKINIS was the Chief of Police for the Kenosha Police Department. Defendant Miskinis had the authority to make and enforce policies of the Kenosha Police Department for all times relevant to this complaint. Mr. Miskinis is sued in his individual and official capacities.

12

**ANSWER**: Upon representations of counsel, Defendant Rittenhouse admits that Daniel G. Miskinis was the Chief of Police for the Kenosha Police Department on August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

39.     Defendants JOHN DOE POLICE OFFICERS are unknown law enforcement officers employed by the Kenosha Police Department, Kenosha County Sheriff's Department, Waukesha County Sheriff's Department, Racine County Sheriff's Department, Washington County Sheriff's Department, Menomonee Falls Police Department, and West Allis Police Department, who were deployed to respond to the protests on August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

40.     Defendant COUNTY OF WAUKESHA is a governmental entity within the State of Wisconsin, an arm of which is the Waukesha County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Waukesha County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

41.     Defendant COUNTY OF RACINE is a governmental entity within the State of Wisconsin, an arm of which is the Racine County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Racine County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

13

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

42.     Defendant COUNTY OF SAUK is a governmental entity within the State of Wisconsin, an arm of which is the Sauk County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Sauk County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

43.     Defendant COUNTY OF WALWORTH is a governmental entity within the State of Wisconsin, an arm of which is the Walworth County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Walworth County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

44.     Defendant COUNTY OF WASHINTON is a governmental entity within the State of Wisconsin, an arm of which is the Washington County Sheriff's Department, which in turn sets policies for the conduct of sheriff's deputies employed by the Washington County Sheriff's Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

45.     Defendant VILLAGE OF MENOMONEE FALLS is a governmental entity within the State of Wisconsin, an arm of which is the Menomonee Falls Police Department, which in turn sets policies for the conduct of officers employed by the Menomonee Falls, Police Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

46.     Defendant CITY OF WEST ALLIS is a governmental entity within the State of Wisconsin, an arm of which is the West Allis Police Department, which in turn sets policies for the conduct of officers employed by the West Allis Police Department. The department deployed officers and equipment to respond to and control the protests on the evening of August 25, 2020.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

47.     Hereinafter, all the law enforcement officers and departments set forth above are referred to, collectively, as the "Law Enforcement Defendants."

**ANSWER**: Defendant Rittenhouse asserts that no answer is required in response to this paragraph. To the extent an answer is required, Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

48.     Hereinafter, the Waukesha County Sheriff's Department, Racine County Sheriff's Department, Sauk County Sheriff's Department, Walworth County Sheriff's Department, Washington County Sheriff's Department, Menomonee Falls Police Department, and West Allis

Police Department, and their officers, are referred to as "Additionally Responding Departments" or "Additionally Responding Officers."

**ANSWER**: Defendant Rittenhouse asserts that no answer is required in response to this paragraph. To the extent an answer is required, Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

49.     Hereinafter, the City of Kenosha, County of Kenosha, County of Waukesha, County of Racine, County of Sauk, County of Walworth, County of Washington, Village of Menomonee Falls, and City of West Allis are referred to as the "Municipal Defendants."

**ANSWER**: Defendant Rittenhouse asserts that no answer is required in response to this paragraph. To the extent an answer is required, Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

50.     Defendant KYLE RITTENHOUSE is a citizen of Illinois who shot and injured Gaige Grosskreutz on August 25, 2020.

**ANSWER**: Defendant Rittenhouse affirmatively admits that he shot and injured Gaige Grosskreutz on August 25, 2020, in a lawful act of self-defense, after Grosskreutz pointed a loaded pistol at his head within point-blank range. Defendant Rittenhouse denies the remaining allegations contained within this paragraph.

## IV.     FACTS

51.     On August 23, 2020, in Kenosha, Wisconsin, KPD officer Rusten Sheskey shot Jacob Blake in the back seven times without justification.

16

**ANSWER**: Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

52. Neighbors and other concerned residents of Kenosha demonstrated in protests against the shooting of Jacob Blake. Demonstrators initially gathered at the site where Mr. Blake was shot. When video of the KPD's shooting of Blake was released, it rightly sparked public outrage. That evening hundreds of additional demonstrators gathered in downtown Kenosha to protest.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

53. Officers from the KPD and the KCSD were dispatched to monitor the demonstrations, police the actions of individuals present, and disperse the crowds.

**ANSWER**: Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

54. The KPD and KCSD officers at the scene were antagonistic toward the demonstrators, who were voicing their outrage at the racist and systemic violence conducted by the very officers who were policing the demonstrations.

**ANSWER**: Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

55. An emergency overnight curfew of 10:15 p.m. was put in place. The curfew was aimed at protestors and not actually directed at, or enforced against, others in the city violating the order.

**ANSWER**: Defendant Rittenhouse affirmatively admits that the curfew put in place was neither lawful, nor legally enforceable. Defendant Rittenhouse lacks sufficient knowledge or

information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

56.     Officers from the KPD and KCSD fired tear gas and rubber bullets into the crowds to break up the demonstrations, and they arrested many demonstrators.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse requests further definition of the word "many."

57.     On Monday, August 24, 2020, the demonstrations continued. Defendant Beth put in place an 8 p.m. curfew. Again, the curfew was aimed at protestors.

**ANSWER**: Defendant Rittenhouse affirmatively admits that any curfew put in place was neither lawful, nor legally enforceable. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

58.     That curfew remained in effect on August 25, 2020.

**ANSWER**: Defendant Rittenhouse affirmatively admits that any curfew put in place was neither lawful, nor legally enforceable. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

59.     On August 25, 2020, in addition to the officers from KPD and KCSD, the Additionally Responding Departments deployed officers and equipment to participate in the response and control of the protests in Kenosha. The Additionally Responding Officers joined forces with the KPD and KCSD and worked under their coordination and tactical command.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

60. The Waukesha, Racine, Sauk, Walworth and Washington County Sheriff's Departments deployed Special Weapons and Tactics (SWAT) teams to coordinate with KPD and KCSD to respond to and control the protests in Kenosha.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

61. In addition to officers, the Additionally Responding Departments also deployed equipment, including service weapons and crowd control tools such as pepper spray, tear gas and so-called non-lethal weapons such as bean bag shotguns and rubber bullets. The Additionally Responding Departments also provided armored military vehicles designed for use in war, including BearCats and Mine-Resistant Ambush Protected trucks (MRAPs).

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

62. At various times, KPD, KCSD and the Additionally Responding Departments used all these tools on or against protestors.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

63. Tear gas is a chemical weapon that the United States military is banned from using under the 1925 Geneva Protocol and the United Nations Chemical Weapons Convention that went into effect in 1997. The KPD, KCSD, and Additionally Responding Departments deployed it repeatedly on protestors in Kenosha between August 23 and 25.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

64.     On the night of August 25, the Additionally Responding Officers all coordinated with and acted under a shared tactical command with KPD and KCSD.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

65.     The demonstrations continued into August 25, 2020.

**ANSWER**: Defendant Rittenhouse affirmatively admits that demonstrations continued during daylight hours on August 25, 2020. Defendant Rittenhouse denies the remaining allegations contained in this paragraph of the Complaint.

66.     That evening, armed individuals descended on Kenosha. They could be seen patrolling the streets in and around the demonstrations, brandishing weapons, threatening residents, and pointing weapons at peaceful demonstrators without provocation.

**ANSWER**: Defendant Rittenhouse denies that "armed individuals descended on Kenosha" the evening of August 25, 2020. Defendant Rittenhouse affirmatively admits that a substantial portion of the individuals who participated in the daytime demonstrations were themselves armed. Defendant Rittenhouse affirmatively admits that a significant portion of the "peaceful demonstrators" still present in the City of Kenosha during the evening of August 25, 2020, were openly carrying, or concealed-carrying firearms. Defendant Rittenhouse further affirmatively admits that a portion of the "peaceful demonstrators" present in Kenosha during the evening of August 25, 2020, could be seen in and around the "demonstrations" brandishing weapons, threatening residents, and discharging firearms. Defendant Rittenhouse lacks sufficient

knowledge or information to form a belief as to the truth of the additional allegations contained within this paragraph of the complaint.

67. The armed individuals had arrived in part based on a Facebook post by Kevin Mathewson on behalf of a militia group he formed called the Kenosha Guard. Mathewson put out a call on Facebook for "patriots willing to take up arms and defend our City tonight against the evil thugs." He received hundreds of online responses, including many hundreds of people indicating that they would be attending.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he has never been a member of the purported "Kenosha Guard" Facebook group; never saw the post referenced in this paragraph until it was turned over as part of discovery in Kenosha County Case 2020CF983; and had never met, personally corresponded with, or otherwise interacted with Kevin Mathewson or any of his known agents or associates, prior to the filing of this action.

68. The responders to Mathewson's post made clear that they intended to patrol the demonstration armed, and with the intent to kill. Responses included the following:

a. "Counter protest? Nah. I fully plan to kill looters and rioters tonight. I have my suppressor on my AR [Assault Rifle], these fools won't even know what hit them."

b. "It's about time. Now it's time to switch to real bullets and put a stop to these impetuous children rioting."

c. "Use hollow points, they expand on contact."

d. "Armed and ready. Shoot to kill tonight."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse

affirmatively admits that none of the responses to the post at issue were made, or even seen by, Rittenhouse until discovery was turned over by the state in Kenosha County Case 2020CF983.

69.     Law Enforcement Defendants knew about the plans and intentions of the armed individuals, including the social media posts, and the plans and intentions of the pro-militia armed individuals that descended on downtown Kenosha.

**ANSWER**: Defendant Rittenhouse affirmatively admits that prior to arriving at Car Source during the early evening of August 25, 2020, he had never met, spoken with, or otherwise interacted with any individuals known to have been armed in the city of Kenosha on August 25, 2020, except Jonathan Smith and Dominick Black. Defendant Rittenhouse denies the remaining allegations contained in this paragraph of the Complaint.

70.     Mathewson is a former Kenosha alderman, was known to the Defendants, and speaks regularly with Defendant Miskinis.

**ANSWER**: Defendant Rittenhouse denies that Kevin Mathewson was known to him on, or prior to, August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

71.     Mathewson, calling himself the Commander of the Kenosha Guard, emailed Defendant Miskinis and Joseph Nosalik, KPD's Public Information Officer. The email stated, "Chief Miskinis: As you know, I am the Commander of the Kenosha Guard, a local militia. We are mobilizing tonight and have about 3,000 RSVP's. We have volunteers that will be in Uptown, downtown, and at the entrances to other neighborhoods." Matthewson also posted the email as an open letter to the Kenosha Chief of Police on social media.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

72.     The email and social media post made clear that these "volunteers" would not be there to protect their own homes or businesses, and that they had not been hired by any local business to secure property. Instead, they intended to patrol the streets, acting as armed law enforcement officials.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

73.     Neither Defendant Miskinis nor Defendant Beth made any attempt to dissuade Mathewson or any another other armed individuals from showing up in Kenosha to patrol the streets.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

74.     Defendants Miskinis and Beth acknowledged that the KPD and KCSD were aware that pro-militia, armed individuals intended to patrol and then did patrol downtown Kenosha.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

75.     The Additionally Responding Departments and their Officers were also fully aware that there were pro-militia armed individuals patrolling downtown Kenosha. This was obvious to them when on scene. Indeed, one of the Additionally Responding Officers wrote in his report from the night of August 25, 2020 that "throughout the night" they observed pro-militia groups "armed, mostly with long guns in the area of 60th and Sheridan."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

76. Among the armed individuals who arrived in Kenosha on August 25 was Defendant Kyle Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph. Defendant Rittenhouse affirmatively admits having stayed overnight in Kenosha, Wisconsin on August 24, 2020, at the home of Dominick Black, as was common during the summer of 2020.

77. Defendant Rittenhouse was a 17-year-old from Antioch, Illinois.

**ANSWER**: Defendant Rittenhouse admits to being 17 years old on August 25, 2020. Defendant Rittenhouse admits that his primary residence in August 2020 was with his mother in Antioch, Illinois. Defendant Rittenhouse affirmatively admits that he was employed in Kenosha County during August 2020, and often stayed either at his father's residence in the city of Kenosha, or at Dominick Black's residence.

78. By his appearance, Defendant Rittenhouse was obviously a minor.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph. Defendant Rittenhouse affirmatively admits that he was approximately seventeen and a half years old on August 25, 2020, but that he experienced no noticeable change in appearance when he turned 18 years old, 131 days later.

79. Defendant Rittenhouse possessed a Smith & Wesson AR-15 style .223 rifle, with a magazine holding 30 rounds of ammunition. This weapon was developed in the late 1950s as a weapon of war.

**ANSWER**: Defendant Rittenhouse admits possessing a Smith & Wesson AR-15 style .223 rifle, with a magazine holding 30 rounds of ammunition on August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

24

80. Defendant Rittenhouse was brandishing his gun openly and conspicuously, strapping it over his shoulder using a tactical sling designed to position the rifle at the center of his chest for rapid elevation and positioning. The rifle was visible at all times across his body or in his hands.

**ANSWER**: Defendant Rittenhouse denies "brandishing his" firearm at any time. Defendant Rittenhouse admits to utilizing a tactical sling on his firearm on August 25, 2020. Defendant Rittenhouse affirmatively admits that the tactical sling was designed, in part, to assist with personal retention of his firearm. Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

81. Defendant Rittenhouse was in clear violation of the law, which prohibits a minor from possessing or displaying such a gun.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he was Complaint within the law of the state of Wisconsin, under Wis. Stat. § 948.60(3)(c), at all times he possessed the firearm at issue.

82. Numerous KPD and KCSD officers saw Defendant Rittenhouse before and after the shootings that night, as did many of the Additionally Responding Officers. Despite being in clear violation of Wisconsin law, Defendant Rittenhouse was not asked for identification, was not questioned, was never detained, and was not disarmed.

**ANSWER**: Defendant Rittenhouse denies that his open carrying of the firearm at issue was a violation of Wisconsin Law. Defendant Rittenhouse affirmatively admits that he was Complaint within the law of the state of Wisconsin, under Wis. Stat. § 948.60(3)(c), at all times he possessed the firearm at issue. Defendant Rittenhouse lacks sufficient knowledge or

information to form a belief as to the truth of the remaining allegations in this paragraph of the Complaint.

83. Instead, the Law Enforcement Defendants allowed Defendant Rittenhouse to patrol the streets of downtown Kenosha with his deadly assault rifle, they invited him in, deputized him, conspired with him, and ratified his actions.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

84. As a result of the Law Enforcement Defendants' actions, within the zone they controlled, Defendant Rittenhouse shot at four Kenosha-area residents, killing two of them and seriously injuring a third.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he shot at four individuals, only after they first attacked and/or threatened him.

85. At around 11 p.m., without provocation, Defendant Rittenhouse pointed his gun at an unarmed demonstrator heading to his car to go home.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

86. Around 11:45 p.m., Defendant Rittenhouse shot Joseph Rosenbaum in the parking lot of an auto dealership. Rosenbaum was killed.

**ANSWER**: Defendant Rittenhouse admits the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that Joseph Rosenbaum waited to ambush Defendant Rittenhouse as he proceeded down Sheridan Ave. Defendant Rittenhouse affirmatively admits that prior to shooting, he was first threatened and chased by Joseph

26

Rosenbaum. Defendant Rittenhouse affirmatively admits that when he could run no further in a safe manner, he lawfully acted in self-defense and shot Rosenbaum.

87.     Instead of seeking medical attention, or any other form of aid, Defendant Rittenhouse called his friend Dominic Black, told Black that he had just killed someone, and then ran.

**ANSWER**: Defendant Rittenhouse admits that he called his friend after the shooting. Defendant also admits that he ran to seek assistance from law enforcement after the shooting and was then chased down by a mob and repeatedly assaulted. Defendant Rittenhouse denies the additional remaining allegations contained in this paragraph of the Complaint.

88.     Defendant Rittenhouse ran from the scene of the Rosenbaum shooting with his assault rifle in his hands, holding it in a ready position. People were yelling that Rittenhouse had just shot someone.

**ANSWER**: Defendant Rittenhouse admits that he ran from the scene of the Rosenbaum shooting towards the established police line, with his weapon affixed to his body. Defendant Rittenhouse admits that while he was running towards the police line, people yelled out that Rittenhouse had just shot someone. Defendant Rittenhouse affirmatively admits that individuals also simultaneously yelled out demands for his execution. (i.e., calls to "Cranium that boy!" and "Truck-f**k him!") Defendant Rittenhouse denies the remaining allegations contained within this paragraph of the Complaint.

89.     Defendant Rittenhouse stumbled and fell to the ground, and several citizens approached him in an attempt to disarm him.

**ANSWER**: Defendant Rittenhouse denies that he stumbled and fell to the ground. Defendant Rittenhouse affirmatively admits that while he was running towards the police line, a

27

mob formed behind him, and he was struck in the head and neck area by Huber's skateboard. Defendant Rittenhouse affirmatively admits that after being struck by Huber's skateboard, he was also struck in the back of the head by an unknown object, and ultimately fell to the ground. Defendant Rittenhouse affirmatively admits that after being knocked to the ground, Huber again struck Defendant Rittenhouse with his skateboard, while other individuals performed assaultive actions, such as jump-kicking Defendant Rittenhouse in the face. Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

90.     The first individual was a Black man who had witnessed Defendant Rittenhouse kill his first victim.

**ANSWER**:  Upon representations of counsel, Defendant Rittenhouse admits that the individual was a Black Man. Defendant Rittenhouse denies the remaining allegations in this paragraph of the Complaint.

91.     This man had no weapon and did not reach for Defendant Rittenhouse's weapon.

**ANSWER**:  Defendant Rittenhouse admits that this individual did not "reach" for his weapon. Defendant Rittenhouse affirmatively admits that this individual took a running jump and propelled his body through the air, kicking Defendant Rittenhouse in the face with both feet.

92.     Instead, he merely tried to kick the gun out of Defendant Rittenhouse's hands.

**ANSWER**:  Defendant denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that this individual took a running jump and kicked Defendant Rittenhouse in the face with both feet, despite having never interacted with Rittenhouse prior to this specific event.

93.     Defendant Rittenhouse shot at him twice, both times aiming for his head.

28

**ANSWER**:  Defendant Rittenhouse admits firing two shots at this individual. Defendant Rittenhouse affirmatively admits that he discharged his weapon in a lawful act of self-defense after the individual had already initiated his attack on Defendant Rittenhouse. Defendant Rittenhouse denies the remaining allegations contained in this paragraph of the Complaint.

94.     After being shot at twice, this first individual ran away, fearing for his life.

**ANSWER**: Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

95.     Anthony Huber approached Defendant Rittenhouse to disarm him, stop the shooting and save the lives of others.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that prior to this specific interaction, Anthony Huber had attempted to forcibly remove Defendant Rittenhouse's head from his shoulders by swinging his skateboard at Defendant Rittenhouse's head and neck area. Defendant Rittenhouse affirmatively admits that Mr. Huber's attempt to disarm him was unlawful.

96.     As Mr. Huber was reaching for Defendant Rittenhouse's rifle to pull it away, without provocation or any legal justification, Defendant Rittenhouse shot him in the chest.

**ANSWER**: Defendant Rittenhouse denies that Anthony Huber reaching for Defendant Rittenhouse's rifle "to pull it away." Defendant Rittenhouse denies that Anthony Huber was shot without provocation or legal justification. Defendant Rittenhouse affirmatively admits that he lawfully fired one shot at Huber as an act of self-defense after Huber struck him twice in the head and neck area with a large skateboard and attempted to unlawfully disarm him. Defendant Rittenhouse denies that Anthony Huber was shot in the chest, however, Defendant Rittenhouse does admit that the bullet which caused Huber's death was ultimately found lodged in his torso.

29

97.     After Mr. Huber was shot, Plaintiff Gaige Grosskreutz approached Defendant Rittenhouse with his hands up, pleading with him to stop his shooting rampage. Without provocation or any legal justification, Defendant Rittenhouse shot at Grosskreutz from point-blank range, hitting him in the arm. Thankfully, Grosskreutz survived.

**ANSWER**: Defendant Rittenhouse affirmatively admits that Grosskreutz had already begun to approach Rittenhouse prior to the shooting of Anthony Huber. Defendant Rittenhouse affirmatively admits that Grosskreutz was only shot after he raised his own pistol, pointed it at Defendant Rittenhouse, and moved in for the kill. Defendant Rittenhouse affirmatively admits that the one shot he fired at Grosskreutz hit him in the arm. Defendant Rittenhouse admits that Grosskreutz survived the shooting. Defendant Rittenhouse denies the remaining allegations contained in this paragraph of the Complaint.

98.     As a result of this shooting, Mr. Grosskreutz suffered a serious bodily injury and has suffered emotional distress.

**ANSWER**: Defendant denies the allegations in this paragraph of the Complaint.

99.     The Law Enforcement Defendants did nothing to stop Defendant Rittenhouse's illegal conduct. They did not arrest him for illegally carrying a gun. They did not disarm him. They did not limit his movement in any way. They did not question him. They did not stop him from shooting individuals after he started. They did not arrest him, detain him, or question him even after he had killed two people.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he was lawfully carrying the weapon at issue, pursuant to Wis. Stat. § 948.60(3)(c).

100.    Instead, Law Enforcement Defendants deputized Defendant Rittenhouse and other armed individuals, conspired with them, and ratified their actions by allowing them to patrol the streets armed illegally with deadly weapons and shoot and kill innocent citizens.

**ANSWER**: Defendant Rittenhouse denies that he was ever "deputized" by any member of law enforcement. Defendant Rittenhouse affirmatively admits that he was Complaint with Wisconsin state law at all times while carrying the firearm on August 25, 2020. Defendant Rittenhouse denies all remaining allegations contained in this paragraph of the Complaint.

101.    Among other things, Law Enforcement Defendants directed their curfew order only at people protesting Law Enforcement Defendants' own police violence, and not at Defendant Rittenhouse and others, who were supporters of law enforcement.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

102.    Defendant Rittenhouse and others were subject to a different set of rules and were allowed to move about freely in areas controlled by Defendants.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that after he left the Car Source/Car Doctor businesses to assist in providing medical aid and extinguish fires, he was prohibited by law enforcement from returning to the Car Source location where his friends Dominick Black and Jonathan Smith were located.

103.    For example, at 9:57 p.m., a Kenosha Police Sergeant sent a message to all officers through the Department's internal messaging system noting the presence of armed individuals patrolling the streets in violation of the curfew order.

31

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

104.    The Additionally Responding Officers were also fully aware of the presence of armed individuals patrolling the streets in violation of the curfew order, based on their observation of their presence "throughout the night" and their participation in a coordinated tactical command.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

105.    Rather than take any steps to detain, dissuade, or disarm these armed individuals, a KPD Sergeant made clear that they were not to be detained, dissuaded, or disarmed, calling the armed individuals in blatant violation of the curfew order "very friendly."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that many of the rioters, including Gaige Grosskreutz, who were present in Kenosha on August 25, 2020, were armed.

106.    Likewise, at 11:26 p.m., callers reported that members of the armed individuals had "slashed tires" in a nearby area. But the Defendants did nothing in response to this conduct, let alone arrest the perpetrators.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

107.    To the contrary, one of the Additionally Responding Officer, on a text thread with others titled "Tactical Enforcement Unit Command Only" wrote, "Gotta love counter protestors. Slashing tires."

32

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

108.     Instead, at approximately 11:30 p.m., about fifteen minutes before Defendant Rittenhouse shot Rosenbaum, Huber and Grosskreutz, several Law Enforcement Defendants were talking to Rittenhouse and the other armed individuals who had congregated in the parking lot of a private business.

**ANSWER**: Defendant Rittenhouse denies that he or any others who may have been present at Car Source/Car Doctor on the evening of August 25, 2020 were "congregated" in the parking lot of the business on or around 11:30pm. Defendant Rittenhouse affirmatively admits that he and the small group who protected the business(es) at issue that evening were at the location for several hours protecting the property, providing medical assistance, and extinguishing community fires with the full knowledge, permission, and support of the owners/operators of the business. Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

109.     Despite the fact that the armed individuals were in violation of the curfew order, the officers and deputies communicated their full support and appreciation for Defendant Rittenhouse and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

110.     In video footage taken at the scene, officers can even be heard asking armed individuals if they needed water. Defendant Rittenhouse can be seen telling the officers that they did need water, which officers gave them.

**ANSWER**: Defendant Rittenhouse admits the allegations in this paragraph of the Complaint.

111. Defendant Rittenhouse walked right up to the police vehicles. Despite his obviously tender age, he was not asked for identification to demonstrate that he could lawfully possess an assault rifle.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he legally possessed the firearm at issue at all times during August 25, 2020.

112. The officers not only provided armed individuals with water, but they voiced their support and appreciation for the actions of Rittenhouse and others, saying: "We appreciate you guys, we really do."

**ANSWER**: Defendant Rittenhouse lacks sufficient information and knowledge to form a belief as to the truth of the allegations contained within this paragraph and affirmatively asserts that the allegations in this paragraph fail to show any evidence of conspiracy or coordination with law enforcement.

113. Needless to say, the Law Enforcement Defendants did not offer assistance or appreciation to any protestors. At the same time the officers were handing out assistance and praise to the armed individuals, including Defendant Rittenhouse, hey can be heard over loudspeakers in their armored vehicles ordering the protestors to disperse: "This is the last warning. You will disperse." And: "This area is closed, you are trespassing, leave now."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

114. No such warnings or threats were made to the armed individuals.

34

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he was warned and threatened by law enforcement officers in the manner described in paragraph 91 when he attempted to return to the Car Source business, prior to the shootings.

115.    The Law Enforcement Defendants deliberately orchestrated these circumstances. A clear message was sent that perceived protestors were required to disperse, while armed individuals who supported law enforcement could roam free and assist the officers. These events directly led to Anthony Huber's death.

**ANSWER**: Defendant Rittenhouse denies participation in, or awareness of, any attempts to "orchestrate" the circumstances related to the shooting of Gaige Grosskreutz. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

116.    Before the fatal shootings, one of the armed individuals was interviewed. He said the following: "You know what the cops told us today? They were like, 'We're gonna push 'em down by you, 'cause you can deal with them, and then we're gonna leave."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

117.    And that is exactly what happened. The Law Enforcement Defendants, including the commanders for these police forces, ordered the protestors to move south, funneling them into a confined area, where they were met by the violence perpetrated by Defendant Rittenhouse and the other armed individuals.

**ANSWER**: Defendant Rittenhouse denies the allegations contained within this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that the rioters present in Kenosha

on August 25, 2020, were free to go in any direction, other than North, based upon the location of the police line.

118. Internal communications and reports from members of the Law Enforcement Defendants reveal that they knew the pro-police armed individuals had gathered around 60th and Sheridan, yet they deliberately funneled protestors out of the park near 56th and Sheridan and forced them South right into the militia group they knew to be pro-police, in violation of the curfew order, slashing tires, and armed with long guns.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse denies being involved with any slashing of tires.

119. The commanders for the Law Enforcement Defendants knew that the act of funneling protestors towards their co-conspirators- the right wing militias including Rittenhouse- created a dangerous situation.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that the rioters present in Kenosha on August 25, 2020, were free to go in any direction, other than North, based upon the location of the police line.

120. One of the protestors funneled by Defendants was Plaintiff Gaige Grosskreutz.

**ANSWER**: Defendant denies that Gaige Grosskreutz was "protesting" during the evening hours of August 25, 2020. Defendant Rittenhouse affirmatively admits that Mr. Grosskreutz was free to go in any direction, other than North, based upon the location of the police line.

121.    Defendants' conduct in funneling the protestors left Plaintiff Grosskreutz with no choice but to enter this confined area.

**ANSWER**: Defendant denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that Grosskreutz was free to go in any direction, other than North, based upon the location of the police line.

122. Plaintiff Grosskreutz and other individuals had no apparent means of escape. The Law Enforcement Defendants funneled protesters [sic] towards this militia while cutting off routes to leave. Only the militia members could move across police lines.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that Grosskreutz was free to go in any direction, other than North, based upon the location of the police line. Defendant Rittenhouse affirmatively admits that he was warned and threatened by law enforcement officers in the manner described in paragraph 91 when he attempted to return to the Car Source business, prior to the shootings.

123. At all times, the Law Enforcement Defendants, Defendant Rittenhouse, and others knew and understood what it meant when they told heavily armed private citizens to "deal with" the protestors. In this manner, the Law Enforcement Defendants, Defendant Rittenhouse, and others arrived at a plan to collectively use force and state authority against the protestors.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

124.    For example, Rittenhouse's own lawyers have stated that the police "maneuvered a mass of individuals down the street towards the auto shops" where the armed individuals had gathered.

**ANSWER**: Defendant Rittenhouse requires additional information regarding which attorney made this specific statement, and what specific action by police was referenced before an answer can be provided. To the extent an answer is required, Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

125.    As a result, the Law Enforcement Defendants invited, deputized, authorized, conspired with, and ratified the actions of Rittenhouse, a boy illegally in possession of an assault rifle, who roamed the street in violation of an emergency curfew order, shooting innocent civilians, killing two, seriously injuring a third, and narrowly missing a fourth.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that any curfew put in place was neither lawful, nor legally enforceable. Defendant Rittenhouse affirmatively admits that on August 25, 2020, he was in lawful possession of the firearm at issue, pursuant to Wis. Stat. § 948.60(3)(c).

126.    To make matters worse, when Huber and Grosskreutz were shot, the Law Enforcement Defendants were at the scene. Protestors yelled to the officers that Defendant Rittenhouse had just shot people. Remarkably, the officers did nothing to stop Defendant Rittenhouse, let alone question him, or arrest him. Instead, officers spoke to Defendant Rittenhouse and then let him walk away.

**ANSWER**: Defendant Rittenhouse denies that he spoke with officers and that he was allowed to just "walk away." Defendant Rittenhouse affirmatively admits that he was pepper

sprayed in the face when he attempted to speak with officers. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

127.    The only reason the Law Enforcement Defendants allowed Defendant Rittenhouse to walk away after shooting three people was because he was white and because he was affiliated with the armed individuals, who had the Law Enforcement Defendants' explicit support.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

128.    By inviting, deputizing, conspiring with, and ratifying the actions of armed individuals, who were empowered to patrol the streets of Kenosha, the Law Enforcement Defendants created an extremely and obviously dangerous and deadly environment, which led directly and foreseeably to the shootings of Gaige Grosskreutz and others.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

129.    The Law Enforcement Defendants' open support of and coordination with the armed individuals in the minutes and hours before the shootings deprived Gaige Grosskreutz and the other protestors of the basic protections typically provided by police. It was a license for the armed individuals to wreak havoc and inflict injury.

**ANSWER**: This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

39

130. Defendant Rittenhouse's own lawyers have blamed the shootings on the Law Enforcement Defendants, highlighting their "abject failure to ensure basic law and order to citizens."

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that his lawyers blame the unprovoked attacks on Defendant Rittenhouse as the direct cause of the shootings.

131. The Law Enforcement Defendants continued their disparate treatment of Black people, even after the deaths of Huber and Rosenbaum and shooting of Grosskreutz. For example, Defendant Miskinis has refused to publicly condemn the crimes of Defendant Rittenhouse or the other armed individuals, and instead has ratified that misconduct. Indeed, he has defended the armed individuals as citizens exercising their constitutional rights. The protestors received the opposite treatment from Defendant Miskinis.

**ANSWER**: Defendant Rittenhouse denies that the deaths of Rosenbaum and Huber—two white men—are related to any disparate treatment Black people may have experienced from the Law Enforcement Defendants on or before August 25, 2020. Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

132. Moreover, in his first press conference after the shooting, Defendant Miskinis refused to make any statements condemning or even dissuading the armed individuals, even when he was specifically asked if he wanted armed vigilante groups to be present again the next night of protests.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

133. If Defendant Kyle Rittenhouse were Black, Defendants would have acted much differently.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as they are pure speculation.

134. If a Black person had approached police with an assault rifle, offering to patrol the streets with the police, he most likely would have been shot dead.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as they are pure speculation.

135. If a Black man had shot three citizens with an assault rifle and was seen walking away from the scene of the shooting with the assault rifle in hand, while other citizens yelled he was an active shooter, he would have been shot dead.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as they are pure speculation.

136. In none of these circumstances would the Law Enforcement Defendants have permitted the individual to roam the streets, illegally and heavily armed, shoot civilians, and then walk past a dozen officers, talk to them, and simply go home.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint, as they are pure speculation.

137.    One need not look any further than the very event that gave rise to the protest at which Gaige Grosskreutz was maimed: although Jacob Blake was not at the site of a shooting, possessed no gun, brandished no weapon, had not shot or hurt anyone, and was climbing into his own car with two children, Blake was shot in the back seven times by officers employed by Defendant KPD.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

138.    By contrast, seventeen-year-old Rittenhouse was walking away from the scene of a double homicide with an assault rifle in his arms, and he was permitted to simply walk away.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits he was pepper sprayed by law enforcement when he attempted to surrender himself to police.

139.    Jacob Blake is Black. Kyle Rittenhouse is White.

**ANSWER**: Defendant Rittenhouse admits that he is White. Upon representations of counsel, Defendant Rittenhouse admits that Jacob Blake is Black.

140.    Moreover, the demonstrators were a diverse group of citizens protesting police violence against Black people, which included many Black-Americans and other people of color. They were protesting, in part, the racial discrimination of Defendants KPD and KCSD, and their officers, as exemplified by the shooting of Jacob Blake.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

141.    The armed individuals were all White.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

142.    Similarly, the protestors were advocating a viewpoint critical of the police, including Defendants KPD and KCSD. The armed individuals espoused a viewpoint that was avowedly pro-police.

**ANSWER**: Defendant Rittenhouse admits that the daytime protestors and night-time rioters present in the city of Kenosha on August 25, 2020, were advocating a viewpoint that appeared to be largely critical of law enforcement. Defendant Rittenhouse denies that the "armed individuals" espoused a viewpoint that was avowedly pro-police.

143.    The difference in treatment of the two groups was stark. The White, pro-police armed individuals were allowed by Defendants to patrol the streets with weapons of war, participating in the police action, and threatening and inflicting violence on innocent civilians; while the diverse group of protestors criticizing police actions were ordered to disperse because they were violating the curfew order. No such orders were given to the pro-police individuals, who were in violation of the curfew as well, and known to be slashing tires.

**ANSWER:** Defendant Rittenhouse denies the allegations contained within this paragraph. Defendant Rittenhouse affirmatively admits that the "diverse group of protestors" were ordered to disperse because they were starting fires, destroying property, and throwing projectiles at law enforcement.

144.    The reaction of some of the Law Enforcement Defendants to the shooting of three individuals by one of the pro-police armed individuals was openly callous. One of them texted on the night of August 25, shortly after Grosskreutz and the others had been shot by Defendant

43

Rittenhouse, "Listening to the gun fire. Such a nice night." He then linked to a livestream of the shooting on Twitter, and texted, "Nice video."

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

145.    The protestors were also treated differently than the armed individuals in terms of who was subject to arrest. In the days after the protests began, more than 150 protestors were arrested for allegedly violating the curfew order. Not even a single one of the armed individuals was arrested by Law Enforcement Defendants for violating the same curfew order.

**ANSWER:** Defendant Rittenhouse denies the allegations contained within this paragraph.

146.    Many of the armed individuals with whom the Defendant departments had allied themselves were avowed racists.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

147.    Among the armed individuals present at the protests was Ryan Balch, a member of the Boogaloo Bois who could be seen patrolling the streets with Defendant Rittenhouse. The Boogaloo Bois are a right-wing militia group whose adherents include neo-Nazis and white supremacists. According to Balch, as many as 32 members of the Boogaloo Bois were in Kenosha patrolling the streets.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

44

148.    In the months after he killed two people and maimed Gaige Grosskreutz, Defendant Rittenhouse was seen in a bar in his hometown flashing an "OK" sign, a symbol of white supremacy/white power.

**ANSWER:** Defendant Rittenhouse denies that the "OK" symbol is solely a symbol of white supremacy and affirmatively asserts that it is also a symbol meaning "okay." Defendant Rittenhouse also denies that Racine, the location of the bar referenced, is in his "hometown." Defendant Rittenhouse seeks additional guidance as to why Plaintiff now accuses him of residing in Racine, WI, when Plaintiff previously alleged in paragraph 59 that Defendant Rittenhouse is "from Antioch, Illinois." Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph of the Complaint.

149.    Later, he would fly to Miami, Florida to meet with Enrique Tarrio, the national leader of the Proud Boys movement- an avowedly racist and violent right-wing organization.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

150.    Defendant KPD's support of, and coordination with, the armed individuals was a product of its systemic, racially discriminatory policies and practices.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

151.    The KPD has just eight Black police officers, out of a force of more than 200 officers. It has never had a Black person in top leadership positions, including police chief, assistant chief, or police inspector.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse additionally questions the relevance of these allegations.

152. Christopher Carter, a former Black police officer in the KPD who retired in 2011, has said he was consistently subject to racist aggression, including being called a "n*****," was discriminated against during his time at the KPD, and witnessed racist policing practices toward civilians.

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse additionally questions the relevance of these allegations.

153. In a recent article in the Washington Post, six current and former officers "described a department at odds with people of color, both inside and outside its ranks, with some officers routinely using racist language and excessive force." One of the former officers stated, "You have officers there who openly admit to pulling someone over because they're Black and driving a nice car. And these are officers who train new officers."

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse additionally questions the relevance of these allegations.

154. Just eleven days before Jacob Blake was shot, a woman was arrested for filming police officers engaging in threats and physical abuse during the arrest of a Black man. Her video footage captured a KPD officer punching a man in the ribs twice after he had already been handcuffed. When she was ordered to disperse, she responded, "We're not moving until we know he's safe!" An officer responded, "Do you want to get shot?"

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse additionally questions the relevance of these allegations.

155.     For his part, Defendant Beth has his own history of racially discrimination [sic] conduct as the Kenosha County Sheriff. In 2018, two Black woman and three Black men were apprehended after a shoplifting incident and a high-speed chase. The youngest individual arrested was 16 years old. In comments after the arrest, Defendant Beth stated that it was time to "stop being politically correct," and that "these people have to be warehoused."

**ANSWER:** Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse additionally questions the relevance of these allegations.

## V.     CAUSES OF ACTION

### A.     Count I: 42 U.S.C. § 1983- Conspiracy to Deprive Constitutional Rights (Against All Defendants)

156.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

157.     Defendants acting in concert with each other and other co-conspirators—including Defendant Rittenhouse, Mathewson, members of the Kenosha Guard, Proud Boys, Boogaloo Boys, and other armed individuals—reached an agreement among themselves to deprive Grosskreutz of his constitutional rights, all as described in the various paragraphs of this Complaint.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

47

158.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Grosskreutz of his constitutional rights.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

159.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

160.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Grosskreutz and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

161.    As a direct and proximate result of the illicit prior agreement referenced above, Grosskreutz's rights were violated and he suffered injuries, including emotional distress and serious bodily injury.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

162.    Plaintiff's' injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; and by employees and contractors of the Kenosha Police Department and Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at

the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that the cause of Plaintiff's injuries was his own, admitted decision to point a loaded pistol at Defendant Rittenhouse's head after feigning surrender.

163.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

B.    **Count II: 42 U.S.C. §1985(3)- Conspiracy to Obstruct Justice Based On Invidious Discrimination (Against All Defendants)**

164.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

165.    Defendants are "persons" as that term is used in 42 U.S.C. §1985.

**ANSWER**: Defendant Rittenhouse admits that he is a "person" as that term is used in the relevant statute. Defendant Rittenhouse denies information or knowledge sufficient to form a belief as to the truth of the remaining allegations.

166.    Defendants, acting in concert with each other and other co-conspirators— including Defendant Rittenhouse, Mathewson, members of the Kenosha Guard, and other non-party armed individuals—reached an agreement among themselves to deprive Grosskreutz of his

constitutional rights and equal protection of the laws, all as described in the various paragraphs of this Complaint.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

167. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Grosskreutz of these rights.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

168. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

169. The conspiracy between Defendants and the other co-conspirators set forth above, and the actions taken in furtherance thereof, were motivated by racial animus.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

170. Specifically, working in concert with these others, Defendants targeted individuals of color and individuals allied with them in protest against racial discrimination, including Grosskreutz, by creating a dangerous environment in which injury to Grosskreutz and others was highly likely. They did this by permitting the all-White armed individuals—many of whom had openly espoused racist and violent intentions—to taunt, threaten and monitor the diverse group of protestors, by permitting the all-White armed individuals to patrol the streets

50

like deputized police officers, by offering the all-White armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the all-White armed individuals to "deal with them." Moreover, in the week or so after the protests began, more than 150 members of the racially diverse group of protestors were arrested for violating Defendants' curfew order. Not a single one of the all-White armed individuals was arrested for violating the same curfew order.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

171. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Grosskreutz and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

172. As a direct and proximate result of the illicit prior agreement referenced above, Grosskreutz's rights were violated and he suffered injuries, including physical pain and emotional distress.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

173. Plaintiff's' injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at

the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that the cause of Plaintiff's injuries was his own, admitted decision to point a loaded pistol at Defendant Rittenhouse's head after feigning surrender.

174.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**ANSWER**:    Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

C.    **Count III: 42 U.S.C. § 1983- Equal Protection (Against All Defendants)**

175.    Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

176.    In the manner described in this Complaint, Defendants denied Grosskreutz equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent that an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

52

177.    Defendants' conduct was motivated by racial animus and constituted purposeful discrimination, and it also affected Grosskreutz and the racially diverse group of protestors in a grossly disproportionate manner as compared to similarly situated White individuals.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

178.    Specifically, working in concert with these others, Defendants targeted individuals of color and individuals allied with them in protest against racial discrimination, including Grosskreutz, by creating a dangerous environment in which injury to Grosskreutz and others was highly likely. They did this by permitting the all-White armed individuals—many of whom had openly espoused racist and violent intentions—to taunt, threaten and monitor the diverse group of protestors, by permitting the all-White armed individuals to patrol the streets like deputized police officers, by offering the all-White armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the all-white armed individuals to "deal with them." Moreover, in the week or so after the protests began, more than 150 members of the racially diverse group of protestors were arrested for violating KPD and KCSD's curfew order. Not a single one of the all-White armed individuals was arrested for violating the same curfew order.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

179.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Grosskreutz and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

180.    As a direct and proximate result of the conduct referenced above, Grosskreutz was deprived of equal protection of the laws, and he suffered injuries, including emotional distress and serious bodily injury.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

181.    Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; and by employees and contractors of the Kenosha Police Department, Kenosha county Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that the cause of Plaintiff's injuries was his own, admitted decision to point a loaded pistol at Defendant Rittenhouse's head after feigning surrender.

182.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Kenosha and the Kenosha Police Department, and the County of Kenosha and the Kenosha County Sheriff's Department, in the manner more fully described below in Count VII.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

54

**D. Count IV: 42 U.S.C. §1983- First Amendment Retaliation (Against All Defendants)**

183. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

184. In the manner described in this Complaint, Defendants subjected Grosskreutz and the other protestors to discriminatory and retaliatory treatment based on their opinions critical of police violence, in violation of the First Amendment of the United States Constitution.

**ANSWER:** This paragraph of the Complaint consists of legal conclusions to which no response is required. To the extent that an answer is required, Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint.

185. Grosskreutz and the other protestors participated in rallies and demonstrations in downtown Kenosha advocating a viewpoint critical of the police, including Defendants KPD and KCSD, similar to the national and worldwide protests against police violence that began in the summer of 2020. Such conduct is protected by the First Amendment of the United States Constitution.

**ANSWER:** Defendant Rittenhouse lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph of the Complaint.

186. The armed individuals espoused a viewpoint that was avowedly "pro-police."

**ANSWER**:  Defendant Rittenhouse denies the allegations in this paragraph of the complaint.

187. Defendants subject [sic] Grosskreutz and other peaceful protestors to discrimination and retaliation because of their viewpoints critical of police. They did this by permitting "pro-police" armed individuals to taunt, threaten and monitor the diverse group of

protestors without consequence, by permitting the "pro-police" armed individuals to patrol the streets like deputized police officers, by offering the "pro-police" armed individuals assistance and praise while simultaneously ordering protestors to disperse, and by ultimately corralling the protestors and funneling them toward the "pro-police" armed individuals to "deal with them." Moreover, in the week or so after the protests began, more than 150 members of the protestors voicing criticism of racist and violent police conduct were arrested for violating KP and KCSD's curfew order. Not a single one of the "pro-police" armed individuals was arrested for violating the same curfew order.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

188.  The protected speech of Grosskreutz and the other protestors, and the viewpoint critical of police that they expressed, was a motivating factor in Defendants' disparate, discriminatory and retaliatory treatment of the protestors.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

189.  Defendants' retaliatory actions in response to Grosskreutz and the other protestors' protected speech have had a chilling effect that acts as a deterrent to free speech.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

190.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Grosskreutz and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

191.     As a direct and proximate result of the conduct referenced above, Grosskreutz's First Amendment rights were violated, and he suffered injuries, including emotional distress and death.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

192.     Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that the cause of Plaintiff's injuries was his own, admitted decision to point a loaded pistol at Defendant Rittenhouse's head after feigning surrender.

193.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

57

E.    **Count V: 42 U.S.C. §1983- Deprivation of Due Process (Against All Defendants)**

194.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

195.    In the manner described in this Complaint, Defendants allowed Defendant Rittenhouse and other illegally armed individuals to patrol the streets of downtown Kenosha with deadly weapons, inviting those individuals to use police powers, deputizing them, conspiring with them, and ratifying their actions.

**ANSWER**: Defendant Rittenhouse denies the allegations contained in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that he was not illegally armed, did not exercise police powers, was not deputized by police, and did not conspire with law enforcement.

196.    Defendants even informed Rittenhouse and these armed individuals that they would funnel demonstrators toward them to be dealt with.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

197.    The misconduct described in this Count increased the danger faced by Grosskreutz and other peaceful demonstrators who were present.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

198.    In addition, the misconduct described in this Count shocked the conscience and was undertaken intentionally, with malice, willfulness, and reckless indifference to the rights of Grosskreutz and others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

199.    As a direct and proximate result of the conduct referenced above, Defendant Rittenhouse shot and maimed Grosskreutz.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

200.    Plaintiff's injuries were caused by the actions and decisions of Defendants Beth and Miskinis, acting in their individual and official, policymaking capacities; and by employees and contractors of the Kenosha Police Department, Kenosha County Sheriff's Department, Additionally Responding Departments, and including the John Doe Police Officers, who acted at the direction of Defendants Beth and Miskinis; the Municipal Defendants; and Defendant Rittenhouse.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that the cause of Plaintiff's injuries was his own, admitted decision to point a loaded pistol at Defendant Rittenhouse's head after feigning surrender.

201.    The misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, the Kenosha Police Department, the Kenosha County Sheriff's Department, and the Additionally Responding Departments, in the manner more fully described below in Count VII.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

F.    **Count VI: 42 U.S.C. § 1983- Failure to Intervene (Against All Law Enforcement Defendants)**

59

202.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

203.    In the manner described in this Complaint, Defendants had knowledge that conspiratorial wrongs were about to be committed.

**ANSWER**:    Defendant Rittenhouse denies the allegations in this paragraph of the complaint.

204.    Each of the Defendants had the power to prevent or aid in preventing the commission of those wrongs.

**ANSWER**:    Defendant Rittenhouse denies the allegations in this paragraph of the complaint.

205.    Defendants neglected to prevent or aid in preventing these wrongful acts where the wrongful acts were committed and could have been prevented by reasonable diligence.

**ANSWER**:    Defendant Rittenhouse denies the allegations in this paragraph of the complaint.

206.    As a direct and proximate result of the conduct referenced above, Grosskreutz's constitutional rights were violated, and he suffered injuries, including physical pain and emotional distress.

**ANSWER**:    Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

207.    As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent them in court proceedings and incurred expenses associated with these proceedings and prosecuting the instant case.

**ANSWER**:  Defendant Rittenhouse denies the allegations in this paragraph of the complaint.

## G.    Count VII: 42 U.S.C. §1983- Municipal Liability/Monell Policy Claim (Against Municipal Defendants)

208.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

209.    As described more fully herein, the Municipal Defendants and the Additionally Responding Departments are themselves liable for the violation of Grosskreutz's constitutional rights.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

210.    Plaintiff's injuries were caused by the policies, practices, and customs of the Municipal Defendants and the Additionally Responding Departments are themselves liable for the violation of Grosskreutz's constitutional rights.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

211.    At all times relevant to the events described above and for a period of time prior and subsequent thereto, the Municipal Defendants failed to promulgate proper or adequate rules, regulations, policies, and procedures to ensure the protection of equal protection, first amendment and other constitutional rights of protestors and other individuals engaged in demonstrations and rallies on issues of public interest; to protect protestors and other individuals engaged in demonstrations and rallies on issues of public interest, including from counter-protestors and other individuals whose actions and presence is likely to create danger and result

61

in violence; to ensure the equal enforcement (or non-enforcement) of curfew orders; to ensure decision-making free of racial discrimination as related to the monitoring and supervision of protests and demonstrations; to ensure decision-making free of viewpoint discrimination as related to the monitoring and supervision of protests and demonstrations; to protect the free speech rights of all persons regardless of race or viewpoint; and to protect against the likely violence attributable to the presence and threats of armed individuals deputizing themselves with police duties. In addition or alternatively, the Municipal Defendants failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training and supervision of officers and agents, with respect to the foregoing topics.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

212.    These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the Municipal Defendants.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

213.    In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the Municipal Defendants had notice of widespread practices by their officers and agents to discriminate and retaliate against racial minorities and their allies, and against protestors challenging discriminatory and violent conduct by police officers including members of the Kenosha Police Department and Kenosha County Sheriff's Department and the Additionally Responding Departments; and to favor the views of "pro-police" groups such as the Kenosha Guard and the other armed individuals; and to subject favored and unfavored groups to different treatment.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

214.    These widespread practices, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the Municipal Defendants directly encouraged and were thereby the moving force behind the very type of misconduct at issue.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

215.    The above widespread practices and customs, so well settled as to constitute *de facto* policies of the Municipal Defendants were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

216.    In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the Municipal Defendants, in that the constitutional violations committed against Grosskreutz were committed with the knowledge or approval of persons with final policymaking authority for the Municipal Defendants or were actually committed by persons with such final policymaking authority.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

217.    Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the Municipal Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

63

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

## H. Count VII: Intentional Infliction of Emotional Distress (Against Defendant Rittenhouse)

218.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

219.    In the manner described in this Complaint, Defendants engaged in extreme and outrageous conduct.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

220.    Defendants' actions set forth above were rooted in an abuse of power or authority.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

221.    Defendants' actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and death, and with reckless disregard of that probability.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

222.    Defendants' actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

223. Defendants' conduct intentionally or recklessly caused severe emotional distress to another.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

I.  **Count IX: Negligent Infliction of Emotional Distress (Against Defendants Rittenhouse, Miskinis, Beth, City of Kenosha, Kenosha County, and John Doe Defendants)**

224. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates their responses to all preceding paragraphs of the Complaint by reference.

225. In the manner described in this Complaint, Defendants were negligent.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

226. Plaintiff was impacted by the incidents related to Defendants' negligence

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

227. Plaintiff suffered serious emotional distress of the type that a reasonable person would expect to occur.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

228. As a direct and proximate result of the conduct referenced above, Grosskreutz suffered injuries including physical pain and emotional distress.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

**J.** **Count X: Negligence (Against Defendants Beth, Miskinis, City of Kenosha, Kenosha County, and John Doe Defendants)**

229. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

230. Defendants had a duty to Grosskreutz and the other protestors to act with ordinary care and prudence so as not to cause harm or injury to Grosskreutz.

**ANSWER**: Defendant Rittenhouse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint.

231. By engaging in the manner described in this Complaint, Defendants failed to act with ordinary care and breached their duty of care owed to Grosskreutz.

**ANSWER**: Defendant Rittenhouse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint.

232. As a direct and proximate result of the conduct referenced above, Grosskreutz suffered injuries, including physical pain and emotional distress.

**ANSWER**: Defendant Rittenhouse lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this paragraph of the Complaint.

**K.** **Count XI: Negligent Hiring, Supervision, and Training (Against Law Enforcement Defendants)**

233. Each paragraph of this Complaint is incorporated as if restated fully herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

234. Grosskreutz suffered damages from foreseeable misconduct of employees and agents supervised by the Law Enforcement Defendants.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

235.    The Law Enforcement Defendants' employees in supervisory roles had a duty to properly supervise officers and to oversee their treatment of Grosskreutz and other protestors.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

236.    The Law Enforcement Defendants blatantly disregarded the high probability that, by permitting their officers and agents to deputize and conspire with armed individuals, Grosskreutz would suffer injuries including serious bodily injury. These Defendants were therefore negligent in their non-discretionary duties to supervise individual officers in their agencies.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

237.    As a direct and proximate result of the negligent supervision described above, Grosskreutz suffered injuries, including physical pain and emotional distress.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

L.    **Count XII: Battery (Against Defendant Rittenhouse)**

238.    Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

239.    In the manner described in this Complaint, Defendant committed unlawful conduct as a result of which Defendant Kyle Rittenhouse shot Gaige Grosskreutz.

67

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

240.    In pointing his gun at Mr. Grosskreutz and ultimately shooting him, Defendant Rittenhouse placed Mr. Grosskreutz in reasonable apprehension of imminent or harmful contact.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that Grosskreutz was only shot after he first approached Rittenhouse with a gun in his hand, feigned surrender, pointed his pistol at Rittenhouse's head, and moved in for the kill.

241.    Defendant Rittenhouse intended to place Mr. Grosskreutz in apprehension of imminent and harmful contact.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

242.    Defendant Rittenhouse shot Mr. Grosskreutz, causing harmful contact.

**ANSWER:** Defendant Rittenhouse admits the allegations contained in this paragraph of the complaint. Defendant Rittenhouse affirmatively admits that Grosskreutz was only shot after he first approached Rittenhouse with a gun in his hand, feigned surrender, pointed his pistol at Rittenhouse's head, and moved in for the kill.

243.    Defendant Rittenhouse intended to shoot Mr. Grosskreutz.

**ANSWER:** Defendant Rittenhouse admits the allegations contained in this paragraph of the complaint. Defendant Rittenhouse affirmatively admits that Grosskreutz was only shot after he first approached Rittenhouse with a gun in his hand, feigned surrender, pointed his pistol at Rittenhouse's head, and moved in for the kill.

244.    The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

245.    As a result of these actions, Grosskreutz suffered severe injuries, including physical pain and emotional distress.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

M.    **Count XIII: Assault (Against Defendant Rittenhouse)**

246.    Each of the Paragraphs of this complaint is incorporated as if fully stated herein.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

247.    In the manner described in this Complaint, Defendant committed unlawful conduct as a result of which Defendant Kyle Rittenhouse shot Gaige Grosskreutz.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

248.    In pointing his gun at Mr. Grosskreutz and ultimately shooting him, Defendant Rittenhouse placed Mr. Grosskreutz in reasonable apprehension of imminent or harmful contact.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

249.    Defendant Rittenhouse intended to place Mr. Grosskreutz in apprehension of imminent and harmful contact.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint. Defendant Rittenhouse affirmatively admits that his only intention in firing at Grosskreutz was to eliminate the reasonable risk of death or great bodily harm posed by Grosskreutz pointing his firearm at Rittenhouse's head and moving in for the kill.

250.     The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

251.     As a result of these actions, Grosskreutz suffered severe injuries, including physical pain and emotional distress.

**ANSWER**: Defendant Rittenhouse denies the allegations in this paragraph of the Complaint.

N.       **Count XIV: Respondeat Superior (Against Defendants City of Kenosha and Kenosha County)**

252.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Defendant Rittenhouse incorporates his responses to all preceding paragraphs of the Complaint by reference.

253.     In committing the acts alleged in the preceding paragraphs, Defendants Miskinis, Beth and John Doe Police Officers were agents, members, or employees of the Municipal Defendants, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

254.     These Defendants are liable as principles for all torts committed by their agents.

70

**ANSWER**: Defendant Rittenhouse lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph of the Complaint.

## AFFIRMATIVE DEFENSES

Now Comes Defendant Rittenhouse, by and through his attorneys, RICHARDS & ASSOCIATES, S.C., and as and for his separate and additional affirmative defenses, alleges as follows:

a. The injuries and damages sustained by Plaintiff, if any, were caused in whole or in part by the acts or omissions of Plaintiff and the failure to mitigate;

b. The injuries and damages sustained by Plaintiff, if any, were caused in whole or in part by the acts or omissions of persons other than Defendant Rittenhouse;

c. The Amended Complaint contains allegations that fail to state claims upon which relief may be granted against Defendant Rittenhouse;

d. Plaintiff cannot establish that any acts or non-acts of Defendant Rittenhouse caused any constitutional deprivations, as Defendant Rittenhouse did not possess the power of law enforcement on August 25, 2020;

e. Plaintiff has failed to state claims for and is not legally entitled to compensatory damages against Defendant Rittenhouse;

f. At all times relevant to matters alleged in Plaintiff's Amended Complaint, Defendant Rittenhouse acted in good faith, in accordance with established laws and administrative rules;

g. All or portions of Plaintiff's Amended Complaint must be dismissed because Defendant Rittenhouse had no personal involvement whatsoever in the events and activities leading to or surrounding the incident that is the basis of this lawsuit;

h. Plaintiff has failed to state claims for and is not legally entitled to punitive damages;

i. Defendant Rittenhouse was at all times relevant to this action in lawful possession of the firearm at issue under the laws of the state of Wisconsin;

j. Defendant Rittenhouse discharged his weapon at Joseph Rosenbaum in a lawful act of self-defense, pursuant to laws of the state of Wisconsin;

k. Defendant Rittenhouse discharged his weapon at Anthony Huber in a lawful act of self-defense, pursuant to laws of the state of Wisconsin;

l. Defendant Rittenhouse discharged his weapon at Gaige Grosskreutz in a lawful act of self-defense, pursuant to laws of the state of Wisconsin;

m. Defendant Rittenhouse discharged his weapon at the unidentified assailant known as "Jump-Kick Man" in a lawful act of self-defense, pursuant to laws of the state of Wisconsin;

n. Defendant Rittenhouse reserves the right to name additional affirmative defenses as they may become known through further discovery or other action in this matter.

## **PRAYER**

WHEREFORE, Defendant Rittenhouse denies that Plaintiff is entitled to any of the relief sought and respectfully requests that the Court:

A. Dismiss Plaintiff's Complaint with prejudice;

B. Award to Defendants their costs and expenses incurred in defending this action; and

72

C. Grant such other and further relief as the Court deems just and proper.

## COUNTERCLAIMS

The Defendant and Counter-Plaintiff, Kyle Rittenhouse, by and through his attorneys, Richards & Associates, S.C., hereby asserts the following counterclaims against Plaintiff and Counter-Defendant Gaige Grosskreutz.

## I.      PARTIES

1.      Counter-Defendant Defendant Gaige Grosskreutz is a citizen of the United States who resides in the state of Wisconsin.

2.      Counter-Plaintiff Kyle Rittenhouse is a citizen of the United States who resides in the state of Texas.

## II.     FACTUAL ALLEGATIONS COMMON TO COUNTERCLAIMS AND AFFIRMATIVE DEFENSES

3.      On August 23, 2020, lawful protesting against police violence began in the city of Kenosha, Wisconsin in response to the police shooting of Jacob Blake.

4.      However, the lawful protests which took place during daytime hours unfortunately turned sinister, and rioting began.

5.      The scale of the rioting was too much for the city and county of Kenosha's law enforcement to handle alone.

6.      During the rioting, individuals self-identified as "demonstrators" roamed the city with firearms and mele weapons. Others armed themselves with pieces of rubble or debris. Innumerable fires were started, resulting in the destruction of many buildings.

7.      Wisconsin Governor Tony Evers failed to call in the national guard to assist in managing the protesting and rioting, and Kenosha was required to utilize the assistance and equipment of additional local law enforcement agencies in the region.

73

8.     However, this assistance was insufficient to manage or control the scope of the riots.

9.     The daytime protesting and nighttime rioting continued for several days.

10.     While some of the rioting was directed towards government and police, innocent members of the community had their small businesses destroyed and suffered significant physical injuries.

11.     Counter-Plaintiff, Kyle Rittenhouse watched these events unfold live on social media and in the news. He was seventeen-and-a-half years old at the time.

12.     While Mr. Rittenhouse legally resided with his mother 20 miles away in Antioch, Illinois, his father and closest friends lived in the City of Kenosha. Mr. Rittenhouse would frequently stay in Kenosha overnight with his friends and family, and also was employed in the neighboring Village of Pleasant Prairie, Wisconsin as a life guard.

13.     Mr. Rittenhouse was part of the greater Kenosha, Wisconsin community and was deeply impacted by the violence and destruction he saw inflicted against innocent members of the community.

14.     The evening of August 24, 2020, Mr. Rittenhouse stayed overnight in Kenosha at the home of his best friend, Dominick Black. Dominick, Kyle, and Dominick's other family members boarded up the Black family residence that day and remained at the home, ready to defend the property and its residents from destruction and violence.

15.     Dominick's family owned several firearms, including two AR-15 rifles. The evening of August 24, 2020, Dominick's father brought both rifles out of his gun safe, in case the threat of force was necessary to defend the property or the Black family.

16.     Dominick's family also owned property Up North, which included a private shooting range. Counter-Plaintiff Rittenhouse had visited the property previously and had used one of the AR-15 rifles at the range.

17.     The next day, Kyle, Kyle's younger sister, Dominick, and members of Dominick's family went to Ruther High School in downtown Kenosha to clean offensive and hateful graffiti from the exterior of the building.

18.     While at Ruther High School, Dominick and Mr. Rittenhouse encountered Dominick's friend, Nick Smith, and Nick Smith's former employer.

19.     Nick Smith and his former employer explained to Dominick and Kyle how rioters had destroyed one of the three locations of the small family business ("Car Source") the previous night.

20.     The business was based on selling used cars and repairing vehicles. The destroyed property included a parking lot full of more than 50 vehicles available for purchase.

21.     The entire lot was lit on fire by rioters, and the damage of the fires exceeded 1.5 million dollars.

22.     Although the inventory in the lot at issue was a complete loss, the business still had a large amount of expensive machinery and other items in its car repair shop across the street.

23.     The owner of the business was concerned about further devastating loss, and Nick Smith and others had already arranged to be present that evening to protect the Car Source repair shop and deter further destruction. Dominick and Mr. Rittenhouse agreed to join in these efforts.

75

24.     Dominick and Mr. Rittenhouse then returned to Dominick's home for supplies. Kyle was a certified lifeguard and had obtained several emergency aid certifications, so he first secured medical supplies to provide aid to anyone who might become injured that evening.

25.     Dominick decided that he wanted to bring his AR-15 with him while protecting the business, for his own personal safety. Because Dominick was going to be armed, Counter-Plaintiff Rittenhouse decided that he should carry the second AR-15, for his own safety as well. The pair then went off to purchase inexpensive slings, in order to assist with personal retention of their rifles.

26.     After purchasing the slings, Dominick and Counter-Plaintiff Rittenhouse headed to downtown Kenosha to the Car Source repair shop they had agreed to protect with Nick Smith.

27.     After arriving at Car Source, Dominick Black, Kyle Rittenhouse, and Nick Smith were joined by two additional former employees of the business, who were also asked to come and protect the property.

28.     While Dominick, Kyle, Nick, and the others were setting themselves up at Car Source to protect the business, other individuals driving on the street observed their activities. These individuals, while not residents of Kenosha, had also observed the violence and destruction of Kenosha on social media and the news. Because of the scope of rioting the prior evenings and Governor Evers' failure to call out the national guard to assist, these individuals had independently decided to come to Kenosha and provide assistance to its innocent citizens and small business owners.

29.     Because of the senseless violence and destruction which had occurred the previous evenings, these individuals also brought along weapons for their personal safety.

30. Having seen Dominick, Nick, Mr. Rittenhouse, and the two others setting up outside Car Source, these individuals, who were from the West Bend area, spontaneously elected to join in the efforts.

31. Neither Dominick Black, Nick Smith, nor Counter-Plaintiff Rittenhouse had ever met, seen, spoken with, or otherwise corresponded with the West Bend individuals prior to this moment. There was no connection between them, other than their mutual desire to assist in the protection of Kenosha citizens and small businesses.

32. The owner of the Car Source businesses then arrived at the location and saw the additional individuals who had volunteered to help protect the property from further destruction. He was so grateful that he cried and insisted on taking a photograph with everyone present at the time.

33. After he left, another, larger group of individuals observed the happenings at Car Source and volunteered their assistance as well. Because the third location of the Car Source business—approximately two blocks south of the destroyed car lot and repair shop—still contained a substantial number of undamaged vehicles, expensive equipment and other property, the larger group of individuals agreed to defend that location. They were also all armed in different capacities.

34. Dominick, Nick Smith, Counter-Plaintiff Rittenhouse, and the West Bend individuals remained at the Car Source repair shop to defend that location and deter further damage.

35. While setting up at the Car Source repair shop, Nick Smith expressed his desire to have a flak jacket that evening for his personal safety. Counter-Plaintiff Rittenhouse had received a flak jacket previously as a police and fire ranger, and offered his vest to Nick Smith because

Rittenhouse believed he had no need for it. Due to his certifications, training, and experience, it had already been decided that Mr. Rittenhouse was to be acting as a medic that evening for the Car Source team, and anyone else who needed assistance.

36.     Although Mr. Rittenhouse was largely acting as a medic, he still carried his AR-15 for most of the evening, for his personal safety. While providing medical care to individuals, Rittenhouse would hand his firearm over to another individual protecting the Car Source repair shop.

37.     The AR-15 possessed by Kyle Rittenhouse on August 25, 2020 had a barrel length greater than 16 inches, and an over-all length greater than 26 inches.

38.     The AR-15 possessed by Kyle Rittenhouse on August 25, 2020 was purchased in Ladysmith, Wisconsin, and had never left the state of Wisconsin since Dominick Black legally purchased it.

39.     At all times on August 25, 2020, Kyle Rittenhouse was in legal possession of the firearm at issue under Wis. Stat. § 948.60(3)(c).

40.     Other citizens of Kenosha and the surrounding areas were also concerned about the damage and violence that had occurred in the city and arrived to try and stop the senseless damage to private citizens and small businesses. Some of these individuals were armed with firearms. Some wielded fire extinguishers.

41.     After the daytime protesting concluded in Kenosha on August 25, 2020, the activities of those present, once again, turned riotous.

42.     One such protestor-turned rioter was Joseph Rosenbaum.

43.     Rosenbaum had been released from a mental hospital earlier that day. After leaving the facility, he briefly went home to see his girlfriend, Kari Swart, in the city of Kenosha.

However, Rosenbaum was the defendant in an open Racine County criminal case for domestic battery against Ms. Swart and was prohibited by the court from having any type of contact with her. Because he had nowhere else to go, Rosenbaum proceeded to downtown Kenosha.

44.     During the riots, Rosenbaum can best be described as an agent of chaos. He lit fires, tipped over port-a-potties, and released chemical weapons on both citizens and law enforcement alike. He shot projectiles at the police and spouted violent racial epithets. He stole a heavy, metal tow-chain from a vehicle and swung it around repeatedly in a violent, threatening manner. He acted erratically and threatened violence against anyone he saw as an easy target.

45.     Another protestor-turned rioter was Anthony Huber. While Huber was not seen lighting any fires, he did throw projectiles at law enforcement officers and encouraged the actions of other rioters.

46.     Counter-Defendant Grosskreutz was a third protestor-turned rioter present in the city of Kenosha during the evening hours of August 25, 2020. While Grosskreutz largely limited his involvement to voyeuristically video-recording the activities taking place, he directly encouraged the rioting and violence of those around him.

47.     Because of the rioting and destruction, law enforcement created a police line directly south of the Kenosha Police station and County Courthouse. This line was eventually pushed south a few additional blocks, dividing the distance between the Car Source repair shop and the third location. The police line blocked the rioters and other citizens from moving North, but they were free to move in any other direction.

48.     Before the police line had been pushed south of the Car Source repair shop, a large group of rioters proceeded back and forth on the street adjacent to the shop. Mr. Rittenhouse and the rest of the impromptu team were repeatedly threatened, even though they

79

remained on the business's private property. Joseph Rosenbaum and others threw homemade chemical weapons and other projectiles at them, and threatened them with violence.

49.    At one point in the evening, Rosenbaum informed Mr. Rittenhouse and other members of the Car Source team that if Rosenbaum were to catch them alone, he would kill them.

50.    After the police line was eventually pushed past the Car Source repair shop, Mr. Rittenhouse and others protecting the property left the location in "teams" to provide additional medical aid and extinguish fires. They utilized the "buddy system" because of the threats of violence previously made against them by Rosenbaum and others.

51.    At one point after initially leaving the car repair shop to provide medical aid, Mr. Rittenhouse was unintentionally separated from his assigned team member. Rittenhouse immediately attempted to return to the Car Source repair shop, however, he was not allowed to cross the police line back to the safety of Car Source.

52.    Being separated from safety and his assigned partner, Rittenhouse took shelter in the bright lights of the Ultimate Gas Station, located adjacent to the police line. As he waited there to figure out what to do, he received a phone call from Dominick Black.

53.    Dominick called Mr. Rittenhouse to alert him that Nick Smith had learned that the group of individuals who were supposed to be guarding the third Car Source location had left without informing anyone at the Car Source repair shop.

54.    Because the group protecting the third location had abandoned the property, rioters had begun to light vehicles on fire.

55.    Dominick was unaware that Mr. Rittenhouse and his assigned partner had been separated, so he tasked Rittenhouse with going down to the third location and stopping the fires.

56.     Mr. Rittenhouse then took off for the third Car Source location, with a fire extinguisher in tow.

57.     While making his way down to the street, Rosenbaum spotted Mr. Rittenhouse walking, alone. He then developed a plan to ambush Rittenhouse and steal possession of his weapon. The last time Mr. Rittenhouse had seen Rosenbaum, he was still armed with the heavy metal chain referenced in previous paragraphs.

58.     As Rittenhouse arrived at the third Car Source location, he discovered that rioters were not only trying to light vehicles on fire. Dozens of individuals were also smashing up the additional vehicle inventory on the lot with metal pipes and other found weapons.

59.     Rosenbaum then ambushed Mr. Rittenhouse from behind, began chasing him through the parking lot, and threw an unknown object at Rittenhouse.

60.     Rosenbaum then cornered Mr. Rittenhouse between two cars parked on the property. Rittenhouse could not proceed south any further because of the gang of violent individuals with pipes and other weapons destroying other vehicles just yards away from him. The only other option was to turn and face Rosenbaum.

61.     As Rosenbaum chased Rittenhouse, Joshua Ziminski, a known cohort of Rosenbaum's that night, fired one shot into the air from the pistol he had been carrying at the ready all evening.

62.     The shot caused general chaos to erupt, which contributed to Rittenhouse's already existing state of panic, and only egged on Rosenbaum.

63.     As Mr. Rittenhouse then turned to face Rosenbaum, Rosenbaum screamed "FUCK YOU" and launched himself at Rittenhouse's gun, contacting the barrel with his outstretched hands.

64.     Instead of allowing an erratic, violent man to obtain possession of his weapon and turn it on Rittenhouse himself, or others, he fired four shots in rapid succession at Rosenbaum. These shots effectively stopped Rosenbaum from making good on his promise to kill Mr. Rittenhouse if he ever caught him alone.

65.     After the shooting, a bystander—Richie McGinnisss—rushed up and began providing medical aid to Rosenbaum.

66.     Counter-Plaintiff Rittenhouse ran from the scene to try and get assistance from police, however, individuals who saw him running away from the shooting and were not aware of the specific circumstances of Rosenbaum's attack, started calling out for others to "Get him!" (Rittenhouse) and kill him. ("Cranium that boy! He just shot a man!")

67.     These calls resulted in the formation of a mob which chased after Mr. Rittenhouse, demanding his death or injury.

68.     As Mr. Rittenhouse ran off towards the established police line, a large group of individuals swarmed Rosenbaum on the ground, with no idea of the actual circumstances leading to the shooting.

69.     Some of these individuals even punched Richie McGinnisss as he tried to perform life-saving aid on Rosenbaum.

70.     Because the scene was across the street from a hospital, a member of the crowd pulled up in an SUV. Rosenbaum was loaded into the back of the vehicle, still accompanied by Richie McGinniss. Members of the crowd still attempted to enact violence on McGinniss, even though he had done absolutely nothing to provoke the violence.

71.     Rosenbaum eventually died from his wounds while at the hospital.

72. As Mr. Rittenhouse first began his run towards the established police line, Counter-Defendant Grosskreutz ran up alongside Rittenhouse. At the time, Grosskreutz was still recording the events of the evening on his cell phone, although he did not personally witness the Rosenbaum shooting.

73. As Grosskreutz briefly ran alongside Rittenhouse, he asked what had happened and if Mr. Rittenhouse had shot someone.

74. Counter-Plaintiff Rittenhouse informed Grosskreutz that he "had to shoot" at Rosenbaum, and that he was running to get police assistance.

75. Grosskreutz then stalled his running, listening to the cries of the mob calling for Rittenhouse's injury or death, and watching the mob chase Rittenhouse as he continued towards the police line.

76. Despite the facts that Grosskreutz did not see the Rosenbaum shooting, had no knowledge of the facts surrounding the shooting, and had already learned from Rittenhouse directly that he had to shoot Rosenbaum, Grosskreutz pulled a concealed, loaded pistol out of the back of his shorts and joined in the mob chasing Mr. Rittenhouse.

77. The mob quickly caught up with Counter-Plaintiff Rittenhouse, with Anthony Huber leading the attack. Huber took a swing at Rittenhouse with his skateboard, attempting to remove his head from his shoulders. Thankfully, the skateboard did not end up striking Rittenhouse with the full amount of force put behind the blow, and he was able to continue forward a few additional feet.

78. Next, an unidentified man in a white tank-top struck Rittenhouse on the back of the head with a hard object and Rittenhouse lost his balance, stumbling to the ground.

79.     After Mr. Rittenhouse fell to the ground, another unidentified individual in a black hat and blue sweatshirt leaped through the air, jump-kicking Rittenhouse in the face with both feet.

80.     As Rittenhouse saw the assailant flying towards him, he fired two shots from his rifle. However the impact of the kick impacted Rittenhouse's aim, causing the rounds to miss their intended target and instead fire straight up into the air. The force of the kick knocked Rittenhouse back, and his head struck the pavement, causing a head injury.

81.     Next, Anthony Huber wielded his skateboard again like an axe with his left hand, striking Rittenhouse in the neck and shoulder area of his body. Simultaneously, Huber reached out with his right hand and grabbed hold of Rittenhouse's firearm. As Huber tried to pull the gun away, Rittenhouse was able to fire one shot at his attacker. This shot entered Huber's lower torso, crossed through his internal organs, and became lodged in his shoulder. Huber died almost instantly.

82.     As Huber was attacking Rittenhouse, Counter-Defendant Grosskreutz ran up and joined the group closing in on Rittenhouse, with his loaded pistol in one hand and a cell phone in the other.

83.     Seeing Grosskreutz approach in such a manner, with his own pistol drawn, Rittenhouse turned his firearm towards Grosskreutz. Mr. Rittenhouse had not yet had the opportunity to get up off the ground after he was first knocked down.

84.     Grosskreutz stopped abruptly when he observed Rittenhouse turn to face him, and simultaneously raised his hands in a gesture of peace or surrender. Grosskreutz was now stopped within only a few feet of where Rittenhouse sat in the street.

84

85.     Seeing Grosskreutz present himself in this peaceful manner, Mr. Rittenhouse lowered his firearm from Grosskreutz.

86.     This gesture, however, was a feint. Counter-Defendant Grosskreutz did not have peaceful intentions and maintained an active grip and ready control of the pistol he still planned to use against Rittenhouse, now that his guard had been lowered by the gesture.

87.     After Rittenhouse lowered his firearm, Grosskreutz abandoned his feint and sprung forward, pointing his pistol directly at Rittenhouse's head.

88.     As Grosskreutz ended his deceptive feint and moved in for the kill, Counter-Plaintiff Rittenhouse was able to fire off one round in an attempt to defend himself. This shot struck Grosskreutz in the right bicep, eliminating his ability to use his pistol against Rittenhouse.

89.     Several other members of the mob who had also been approaching Rittenhouse with various weapons and ill intentions backed off upon seeing the shootings of Huber and Grosskreutz.

90.     After seeing these other individuals back down, Counter-Plaintiff Rittenhouse was finally able to get himself up off of the ground and continued his attempts to reach law enforcement.

91.     Mr. Rittenhouse then approached the police line, with his hands raised in the air, and tried to surrender himself and receive police assistance. However, law enforcement ordered him to get out of the way and refused to listen to what he had to say. Mr. Rittenhouse then approached a parked squad car to again try and surrender himself, however, the officers inside deployed pepper spray at him.

92.     Mr. Rittenhouse was finally able to cross the police line and proceeded back to the safety of the Car Source repair shop. Although he still wished to immediately turn himself in

to law enforcement, the Kenosha police station was inaccessible because of a protective fence that had been erected around several governmental buildings.

93.    Because Rittenhouse could not reach law enforcement in Kenosha, Dominick Black drove Rittenhouse back to his mother's home in Antioch, Illinois, so that Kyle and his mother could go to the Antioch Police Station and surrender himself there.

94.    The entire event—from Rosenbaum's initial ambush on Rittenhouse through him being pepper sprayed by law enforcement—lasted only 2 minutes and 55 seconds.

95.    Despite clearly acting in lawful self-defense, Counter-Plaintiff Rittenhouse was ultimately arrested and criminally charged for the deaths of Rosenbaum and Huber; the shooting of Counter-Defendant Grosskreutz; shooting at Jump-Kick man; and for endangering the safety of Richie McGinniss.

96.    During Rittenhouse's November 2021 jury trial, it was judicially determined that Rittenhouse was in lawful possession of the firearm at issue at all times on August 25, 2020.

97.    On November 19, 2021, a 12-person jury found that Rittenhouse had lawfully acted in self-defense and found him not guilty of all charges.

98.    Counter-Plaintiff Rittenhouse has suffered severe injury, including pain and severe emotional distress as a result of the attacks against him by Rosenbaum, the mob, Huber, and Counter-Defendant Grosskreutz.

99.    Counter-Plaintiff Rittenhouse only fired eight shots on August 25, 2020. He only fired his weapon at the four individuals who actually physically attacked or assaulted him.

100.    At the times he shot his weapon, Counter-Plaintiff Rittenhouse was in reasonable apprehension of death or great bodily injury from those individuals, as well as additional onlookers or participants.

101.    Mr. Rittenhouse was diagnosed with PTSD following these incidents and still suffers from emotional distress to this day.

## III.    CAUSES OF ACTION

### A.    <u>Count 1: Assault</u>

102.    Each of the paragraphs of this Complaint is incorporated as if fully stated herein.

103.    In the manner described in this Counter Claim, Counter-Defendant Grosskreutz committed unlawful conduct by carrying a concealed weapon without a valid license; running up on Counter-Plaintiff Rittenhouse with his weapon drawn as Rittenhouse lay on the ground; feigning surrender; pointing a loaded pistol at Rittenhouse's head; and moving in for the kill.

104.    By running up on Counter-Plaintiff Mr. Rittenhouse with his weapon drawn as Rittenhouse lay on the ground; feigning surrender; pointing a loaded pistol at Mr. Rittenhouse's head; and moving in to for the kill; Counter-Defendant Grosskreutz placed Mr. Rittenhouse in a reasonable apprehension of imminent and harmful contact.

105.    Counter-Defendant Grosskreutz intended to place Mr. Rittenhouse in apprehension of imminent and harmful contact by attempting to execute him.

106.    The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of Mr. Rittenhouse.

107.    As a result of these actions, Counter-Plaintiff Rittenhouse suffered severe injuries, including emotional distress.

### B.    <u>Count 2: Intentional Infliction of Emotional Distress</u>

108.    Each of the paragraphs of this Complaint is incorporated as if fully stated herein.

109.    In the manner described in this Counter Claim, Counter-Defendant Grosskreutz engaged in extreme and outrageous conduct.

110. Counter-Defendant Grosskreutz's actions set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and physical injury, and with reckless disregard of that probability.

110. Counter-Defendant Grosskreutz's actions set forth above were undertaken with malice, willfulness, and reckless indifference to the rights of Mr. Rittenhouse.

111. Counter-Defendant Grosskreutz's conduct intentionally or recklessly caused severe emotional distress to Mr. Rittenhouse.

**C.** **Count 3: Negligent Infliction of Emotional Distress**

112. Each of the paragraphs of this Complaint is incorporated as if fully stated herein.

113. In the manner described in this Complaint, Counter-Defendant Grosskreutz was negligent.

114. Counter-Plaintiff Rittenhouse was impacted by the incidents related to Counter-Defendant Grosskreutz' negligence.

115. Counter-Plaintiff Rittenhouse suffered serious emotional distress of the type that a reasonable person would expect to occur based upon Counter-Defendant Grosskreutz's conduct.

116. As a direct and proximate result of the conduct referenced above, Counter-Plaintiff Rittenhouse suffered injuries, including severe emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Counter-Plaintiff Rittenhouse respectfully requests that this Court enter judgment in his favor and against Counter-Defendant Grosskreutz, and award him all relief allowed by law, including but not limited to the following:

A. All appropriate relief at law and equity;

B. Declaratory relief and other appropriate equitable relief;

C. Economic losses on all claims allowed by law;

D. Compensatory and consequential damages, including damages for emotional distress, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

E. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

F. Attorney's fees and costs associated with this action on all claims allowed by law;

G. Pre-judgment and post-judgment interest at the lawful rate; and

H. Any other appropriate relief at law and equity that this Court deems just and proper.

**COUNTER-PLAINTIFF RITTENHOUSE HEREBY DEMANDS A JURY TRIAL**

DATED at Racine, Wisconsin this 13th day of April, 2023.

Respectfully Submitted,

s/Mark D. Richards_____
Mark D. Richards, WI Bar #1006324
RICHARDS & ASSOCIATES, S.C.
209 8th Street
Racine, WI 53403
(262) 632-2200 (P)
(262) 632-3888 (F)
mdr@richardslawracine.com
*Attorneys for Defendant Kyle Rittenhouse*

s/Natalie L. Wisco_____
Natalie L. Wisco, WI Bar #1101661
RICHARDS & ASSOCIATES, S.C.
209 8th Street
Racine, WI 53403
(262) 632-2200 (P)
(262) 632-3888 (F)
wisco@richardslawracine.com
*Attorneys for Defendant Kyle Rittenhouse*